RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SUE FRITZ,

        *Plaintiff-Appellant,*

    *v.*

CHARTER TOWNSHIP OF COMSTOCK, a public
body; TIM HUDSON, individually and in his
official capacity as the supervisor for the
Charter Township of Comstock,

        *Defendants-Appellees.*

No. 08-2578

>

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-01254—Robert Holmes Bell, District Judge.

Argued: October 9, 2009

Decided and Filed: January 28, 2010

Before: RYAN, COLE, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** William Frank Piper, II, WILLIAM F. PIPER, PLC, Portage, Michigan, for
Appellant. James R. Nelson, SCHOLTEN FANT, P.C., Grand Haven, Michigan, for
Appellees. **ON BRIEF:** William Frank Piper, II, WILLIAM F. PIPER, PLC, Portage,
Michigan, for Appellant. James R. Nelson, SCHOLTEN FANT, P.C., Grand Haven,
Michigan, for Appellees.

    CLAY, J., delivered the opinion of the court, in which COLE, J., joined. RYAN, J.
(p. 17), delivered a separate dissenting opinion.

_____

**OPINION**

_____

    CLAY, Circuit Judge. In this appeal from the district court order granting in part

Defendant's Motion for Summary Judgment as to Plaintiff's claims of retaliation for the

exercise of her First Amendment rights and denying in part Defendant's Motion as to Plaintiff's related state tort law claims but dismissing those claims without prejudice, Plaintiff, Sue Fritz, argues that the allegations in her complaint were sufficient to state a claim for retaliation under 42 U.S.C. § 1983. For the reasons that follow, we **REVERSE** the district court's order and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

Because this appeal is from what was treated as a motion to dismiss on the pleadings, the facts as set forth in the complaint are taken as true for the purposes of this appeal. Plaintiff was an independent agent for the Farm Bureau Insurance Company ("Farm Bureau") doing business as the Fritz Agency out of an office in her home in Comstock, Michigan. The home had been purchased contingent upon approval for a home office, so Plaintiff applied for and received a Special Use Permit in October 2005.

While Plaintiff's Special Use Permit application was pending, she attended several Comstock Planning Commission and Board of Trustees meetings related to the approval of her home office and some other meetings, during which she noticed procedural irregularities. At one meeting, Defendant Township Supervisor Tim Hudson became irritated with Plaintiff's presence when she was not on the agenda and in another meeting he expressed frustration with Plaintiff's monitoring of the meetings, allegedly in an attempt to intimidate her from attending in the future.

Plaintiff then learned that Comstock zoning restrictions and ordinances restricted the way she could conduct her business with regards to a sign describing the business, employees working in the home office, and the proportion of the home used as an office. She applied for a zoning variance, which was denied, and subsequently Plaintiff was issued a signage violation. Plaintiff applied for a signage variance, which also was denied. During the application process, Plaintiff continued displaying her sign, but then removed it when her variance was denied.

In late 2005 and early 2006, citizens and Township officials allegedly made false statements about Plaintiff and her home office. In July 2006, Plaintiff complained to

Defendant Hudson about Township officials falsely accusing her of zoning and other violations and about a neighbor's harassment.

On three occasions – July 28, 2006, November 15, 2006, and March 1, 2007 – Defendant Hudson spoke via telephone with Plaintiff's supervisors at Farm Bureau ("Plaintiff's employer" or "employer") about her activities in Comstock, including her attendance of public meetings, public comments and advocacy of her business, her petitioning of Comstock for a redress of grievances related to her business, and her overall public relations with the community of Comstock.[1]  In the first phone conversation, Defendant Hudson discussed Plaintiff's comments in planning commission meetings, a petition in the neighborhood against Plaintiff, and a letter to the editor written by Plaintiff in which Defendant Hudson alleged she "bashed" Comstock.  (Dist. Ct. Doc. No. 1, Compl. ¶¶ 25-26).  Defendant Hudson said that if Plaintiff would "tone down her speech and remove her sign, her problems might go away." (Dist. Ct. Doc. No. 1, Compl. ¶ 27).  In the second phone call, Defendant Hudson emphasized that Plaintiff's public comments and her petitioning for redress of grievances would create adverse consequences for her and Farm Bureau from a "public relations perspective." (Dist. Ct. Doc. No. 1, Compl. ¶ 32).  Finally, in the third phone conversation, Defendant Hudson again commented on the same issues and warned that Farm Bureau's presence in Comstock was in jeopardy because of Plaintiff's conduct inasmuch as the community was "allegedly in an uproar about it."  (Dist. Ct. Doc. No. 1, Compl. ¶¶ 34-35).

Between the first and second phone conversations in September 2006, another Comstock Planning Commission member, Steve Gazdeg, spoke with Plaintiff's employer to express displeasure that Plaintiff had brought her attorney to a Planning Commission meeting.

After the first phone call, Plaintiff's employer spoke with her about changing her behavior in the community, and three weeks after the third conversation Plaintiff's employer terminated her relationship with Farm Bureau because of her "controversial

---

[1] According to the parties' briefs on appeal, each of these conversations was initiated by Plaintiff's employer, although this is not a matter alleged in the pleadings in the district court.

community relations with [her] neighbors and with the local governmental unit." (Dist. Ct. Doc. No. 1, Compl. ¶¶ 30, 39).

Plaintiff's attendance at public meetings and her comments in public forums and in the press began prior to, but continued after the phone conversations and after her termination by Farm Bureau. Before the first phone conversation, she contacted Defendant Hudson on several occasions to complain about Comstock officials accusing her of zoning and other violations and to complain about harassment from a neighbor. After the second conversation, in January 2007, Plaintiff criticized Comstock administrators in a public meeting, which was reported in a local newspaper. Following her termination, Plaintiff attended a Comstock public meeting in April 2007 and engaged in a heated discussion with a Comstock resident, during which time the video camera Plaintiff brought to record the meeting was broken.

Plaintiff filed this lawsuit seeking damages, injunctive relief, and attorney's fees on December 14, 2007 in the United States District Court for the Western District of Michigan alleging that the Charter Township of Comstock ("Comstock") and its Supervisor, Tim Hudson, engaged in unlawful retaliation, under 42 U.S.C. § 1983, against her for exercising her First Amendment rights by speaking critically of Comstock in public forums and in the press and that this retaliatory conduct also resulted in several state tort law violations raised under supplemental jurisdiction.

On May 1, 2008, Defendants Comstock and Hudson filed a motion that was styled as a Motion for Summary Judgment, but which the court treated as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) since Defendants relied upon that rule and did not offer any matters for consideration beyond the pleadings. On November 26, 2008, the district court granted Defendant's motion as to the retaliation claims, but denied it as to the state tort law claims, electing instead to dismiss those claims without prejudice under its discretionary power to decline jurisdiction over supplemental state law claims when the federal claim has been dismissed. *Fritz v. Charter Tp. of Comstock*, 2008 WL 5083503 at *5 (citing *Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 583 (6th

Cir. 2007)); *see also Musson Theatrical v. Fed. Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996).

Plaintiff filed notice of appeal on December 10, 2008, appealing only the district court's ruling as to the retaliation claim.[2]

## DISCUSSION

**Defendant's Motion to Dismiss Regarding the First Amendment Retaliation Claim**

**A.       Standard of Review**

Appeals from motions to dismiss on the pleadings under Fed. R. Civ. P. 12(c) are reviewed *de novo*, pursuant to the same standards that should have been applied in the district court. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted).

The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible. *Ashcroft v. Iqbal,* --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. vs. Twombly*, 550

---

[2]Defendants attempt to raise two additional issues in this appeal: 1) whether Plaintiff stated a claim for municipal liability on the part of the Township; and 2) whether any of the Defendants are entitled to qualified immunity. The district court did not reach these issues due to its ruling on the retaliation claim. We decline to reach them on appeal.

U.S. 544, 555 (2007)); *see also Delay v. Rosenthal Collins Group, LLC.,* 585 F.3d 1003, 1005-06 (6th Cir. 2009).

**B.      Plaintiff's Complaint Was Sufficient to State a Claim for First Amendment Retaliation**

To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

**1.      Defendants Acted Under Color of State Law**

Plaintiff alleged in her complaint that Defendant Hudson was employed as the Township Supervisor, but she made no clear allegations that he was acting under color of state law when he had three phone conversations with her employer.  However, the district court assumed that Plaintiff had adequately alleged state action for purposes of this motion and the Defendants did not dispute that characterization in their brief on appeal.  Therefore, it does not appear from the pleadings to be in dispute whether Defendant Hudson acted under color of state law, and so it will be assumed that Plaintiff sufficiently pled state action for purposes of evaluating the motion to dismiss. *See Black v. Barberton Citizens Hosp.,* 134 F.3d 1265, 1267-68 (6th Cir. 1998) (discussing the contours of "acting under color of state law" for purposes of § 1983 litigation and its similarity to state action for purposes of the Fourteenth Amendment).

**2.      Plaintiff's Allegations of Retaliatory Conduct by Defendants**

The second prong of the analysis – whether Defendant's conduct amounts to a deprivation of a right protected by federal law – is analyzed in the context of retaliation claims under 42 U.S.C. § 1983 as a three factor analysis.  The plaintiff must plead factual allegations to establish that

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Mezibov v. Allen,* 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

### a. Plaintiff's Conduct is Protected by the First Amendment

Plaintiff's allegations that she engaged in public comment at public meetings for Comstock and that she made comments in the press via letters to the editor certainly suffice as protected conduct under the First Amendment. *See Leonard v. Robinson*, 477 F.3d 347, 357-58 (6th Cir. 2007); *see also Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois,* 391 U.S. 563, 568-573 (1968). Defendants do not contest that Plaintiff's conduct is protected by the First Amendment. *Fritz*, 2008 WL 5083503 at *2.

### b. Defendants' Alleged Conduct Was Sufficient to State a Claim for an Adverse Action

The parties primarily disagree on whether there was an adverse action by the Defendants against Plaintiff that would "deter a person of ordinary firmness from continuing to engage" in the kinds of protected conduct in which Plaintiff was engaging. *Mezibov,* 411 F.3d at 717. The three phone conversations between Defendant Hudson and Plaintiff's employer are the crux of the alleged adverse actions, which Plaintiff characterizes as follows:

> Tim Hudson's acts of informing Farm Bureau of his dislike and opposition to Ms. [Plaintiff]'s speech that she made in Comstock Township forums, that she should refrain from doing so in the future, and warning Farm Bureau that its presence in the community would be jeopardized if she did not refrain from doing so in the future.

(Record No. 29, Pl.'s Br. in Opp. 4). Plaintiff also alleged that she was denied zoning and signage variances in retaliation for her protected conduct. Defendant's contend in their motion to dismiss that the adverse action is actually the termination of Plaintiff by Farm Bureau because only that kind of conduct amounts to an adverse action under established law, (Record No.25, Defs.' Br. in Supp. 7), but in order to give effect to the

factual allegations in plaintiff's complaint, this Court must instead decide, as the district court did, whether the phone conversations and the denial of variances are legally sufficient to give rise to a claim of an adverse action.

The term "adverse action" arose in the employment context and has traditionally referred to actions such as "discharge, demotions, refusal to fire, nonrenewal of contracts, and failure to promote." *Thaddeus-X*, 175 F.3d at 396. However, this Circuit has held that any action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation. *Id.* at 397. The analysis of this factor must be tailored to the circumstances such that prisoners might have to endure more than public employees, who in turn might have to endure more than the average citizen. *Mezibov,* 411 F.3d at 721 (citing *Thaddeus-X,* 175 F.3d at 398). Plaintiff is not a public employee, official, or prisoner, and so the level of injury she must allege would be the lower limit of a cognizable injury for a First Amendment retaliation claim. The appropriate formulation for these circumstances is whether the actions of Defendant Hudson and other Comstock officials would be sufficient to deter an average citizen from participating in public meetings and criticizing local officials about matters directly relevant to the citizen's business interests in the community.

There are very few cases in this Circuit addressing First Amendment retaliation against private individuals. Since our *en banc* decision in *Thaddeus-X* setting forth the applicable standard of law, this case is one of the first concerning private individuals and is the first in which this Court must address whether it constitutes retaliation for a public official to speak with a private employer about an employee's protected conduct in such a way as to either defame the employee or to threaten her economic livelihood directly or indirectly. Most of the case law in the Circuit involving retaliation claims involves public employees who publicly criticize the government, i.e., their employer, or involves prisoners who are harassed or threatened by prison officials for engaging in protected conduct. *See, e.g., Hughes v. Region VII Area Agency on Aging,* 542 F.3d 169, 185-86 (6th Cir. 2008) (public employee terminated after conversations with co-workers and

publishing letter to editor regarding budget); *See v. City of Elyria,* 502 F.3d 484, 493-94 (6th Cir. 2007) (police officer fired after speaking with FBI regarding corruption in the police department); *Lockett v. Suardini,* 526 F.3d 866, 874 (6th Cir. 2008) (prisoner alleging retaliation by prison guards for comments made in an administrative hearing); *Thomas v. Eby,* 481 F.3d 434, 440-41 (6th Cir. 2007) (prisoner claiming retaliation in the form of misconduct ticket for filing a grievance).  Our caselaw therefore provides insufficient guidance on whether Plaintiff's complaint is sufficient to state a claim of retaliation, especially with regards to the alleged adverse action.

Several years prior to *Thaddeus-X*, this Circuit found conduct that was factually quite similar to this case sufficient to state a claim for First Amendment retaliation. *McBride v. Village of Michiana*, 100 F.3d 457, 459-61 (6th Cir. 1996) (qualified immunity appeal in which journalist claimed retaliation based on her reporting of public meetings when village officials called her employer to urge the newspaper to remove plaintiff from political beat).[3]  *McBride* is instructive in showing that this Circuit has previously held that the very kinds of actions alleged by Plaintiff can amount of First Amendment retaliation, even if there have been few cases since *Thaddeus-X* to address the particular context of public official retaliating against a private individual.[4]

Plaintiff alleges essentially two forms of adverse action in her complaint:  1) the three conversations between Defendant Hudson and her employer; and 2) the denial of her zoning and signage variances.

---

[3]*McBride* may have implied that in First Amendment retaliation cases allegedly adverse actions can be divided into essentially two categories – actions "solely to punish [Plaintiff] for her choosing to exercise one of the basic freedoms upon which our society is founded" and actions that constitute Defendant's protected speech under the First Amendment, *McBride*, 100 F.3d at 462. To the extent it ever existed, that implied heightened standard for First Amendment retaliation was abrogated by *Thaddeus-X* and its progeny which have consistently applied the causality standard that the "adverse action was motivated *at least in part* by the plaintiff's protected conduct." *Thaddeus-X*, 394 F.3d at 394 (emphasis added); *Mezibov*, 411 F.3d at 717 (applying *Thaddeus-X* standard in First Amendment retaliation case).

[4]There is one case of First Amendment retaliation after *Thaddeus-X* which deals with a private individual and cites *McBride*, but its facts are not very similar to those in this case. *See Davidian v. O'Mara*, 210 F.3d 371 (table) (6th Cir. 2000). *Davidian* concerns a journalist who was claiming public officials were denying him access to sources in retaliation for his articles.

####    i.    Defendant Hudson's Conversations with Farm Bureau

The primary allegation in Plaintiff's complaint is that Defendant Hudson's conversations with Plaintiff's employer amounted to threats to her economic livelihood, an injury that she alleges to be an adverse action that would deter a person of ordinary firmness from exercising his or her First Amendment rights. Plaintiff's complaint alleges that Defendant Hudson's statements were "designed to both pressure Ms. Fritz to discontinue attending Comstock meetings and express opinions on Comstock issues publicly and privately and discontinue petitioning Comstock for a redress of grievances, as well as pressure Farm Bureau to move out of Comstock or terminate its relationship with Ms. Fritz or both." (Dist. Ct. Doc. No. 1, Compl. ¶ 29). This "factual allegation" may be better understood as an inference from what Defendant Hudson is alleged to have communicated to Plaintiff's employer rather than a fact that must be accepted as true for purposes of evaluating the motion to dismiss. Still, Plaintiff's factual allegations, construed in the most favorable light for her position, show that Defendant Hudson communicated his dislike and opposition to her speech and commented on his opinion of its effect on her reputation and on the reputation of Farm Bureau in Comstock.

While Plaintiff may not have pled specific facts to support her claim that Defendant Hudson specifically threatened her business, nor that he attempted to persuade Farm Bureau to terminate its contract with Plaintiff, there is certainly a "set of facts" which, if accepted by the trier of fact, "would entitle [Plaintiff] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see Twombly*, 550 U.S. at 561-63 (abrogating the "no set of facts" minimal standard often cited from *Conley* by requiring more than a mere possibility of such a "set of facts"). It remains a question of material fact, discoverable through depositions of the parties involved, as to what the exact contents of the conversations were. If Defendant Hudson in fact made statements that were designed to communicate to Farm Bureau that it would be in the business' interest in terms of its dealings in Comstock to reign in Plaintiff's exercise of her First Amendment rights, or that it would be better for Farm Bureau to cancel its contract with Plaintiff, that

would be an adverse action sufficient to support a claim of retaliation. The complaint alleged that such threats were made, even if generally alleged, which is sufficient at this stage of the litigation both to put Defendants on notice of the claim and to raise a plausible claim of an adverse action.

A person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her employer to terminate the person's contract or to have her change her behavior. The fact that the public official did not have the power to actually terminate the employment, *see Cohen v. Smith,* 58 F. App'x 139 (6th Cir. 2003) (police officers reporting threats by doctor to residency program not an adverse action because they lacked the power to terminate the doctor), makes this case close, but since Defendant Hudson and the other Comstock Defendants did have the power to substantially affect Farm Bureau's ability to do business in Comstock through their role in enacting township ordinances and making zoning decisions, the alleged threats are more tangible.

Plaintiff further alleges that many of the statements made by Comstock officials to her employer were false, misleading or both. Defamatory statements motivated in part by a person's exercise of their First Amendment rights can be, but are not always, legally sufficient standing alone for a claim of adverse action under the framework of this Circuit. *See Mezibov*, 411 F.3d at 722-723 (defamatory comments made by prosecutor did not rise to the level of adverse action for 42 U.S.C. § 1983 retaliation claim). Examples of such statements from Defendant Hudson include statements that Plaintiff was in "violation of an ordinance prohibiting solicitation of business clients," that Plaintiff had written a letter to the editor in which she "bashed Comstock," and that "[Plaintiff] had said things in planning commission meetings that she should not say, that there was a petition in her neighborhood against her, and that she was very antagonistic against Comstock." (Dist. Ct. Doc. No. 1, Compl. ¶¶ 25-26, 28).

Defendants allege that these statements may not suffice as defamation under Michigan tort law because they are either not defamatory or are protected speech:

> A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual. However, not all defamatory statements are actionable. If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment.

*Ireland v. Edwards*, 584 N.W.2d 632, 636 (Mich.App.1998) (citing *New Franklin Enterprises v. Sabo,* 480 N.W.2d 326, 328 (Mich. App. 1991); *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990)).  But the inquiry on a motion to dismiss is not whether Plaintiff will be successful on the merits, but simply whether her pleadings are sufficient to state a claim upon which relief can be granted.

Many of the statements could not reasonably be interpreted as expressing facts about Plaintiff, and instead are opinions about Plaintiff's feelings towards Comstock or about the propriety of her speech at public meetings, which, especially if they are considered to be about a matter of public concern, would constitute protected speech under the First Amendment unless they could be objectively proven to be false. *Milkovich,* 497 U.S. at 19-20 ("a statement on matters of public concern must be provable as false before there can be liability under state defamation law" and the First Amendment "provides protection for statements that cannot reasonably [be] interpreted as stating actual facts about an individual") (internal quotation marks and citations omitted).  The other statements – the petition against her and her violations of an ordinance – are potentially defamatory if they are not true since a third party, her employer, might be deterred from associating with her as a result of the statements from Defendant Hudson.  Therefore, had the district court reached the state law claims, it most likely should have allowed Plaintiff's defamation claim to survive the motion to dismiss.

However, the Court must inquire whether such potentially defamatory statements are sufficient as a matter of law to state a claim that the conduct amounts to an adverse action for purposes of the § 1983 claim.  The kinds of statements – both defamatory and not – that have been interpreted as adverse actions for the purposes of a retaliation claim are of a fundamentally different character than Plaintiff's allegations that Defendant Hudson falsely stated that she was violating ordinances and that there was a petition

against in her in the neighborhood.  For example, in *Bloch v. Ribar*, 156 F.3d 673, 679-681 (6th Cir. 1998), this Circuit found that a sheriff who used a press conference to publicize confidential and embarrassing details of the plaintiff's rape by an unknown assailant in retaliation for the victim's public criticism of the sheriff for failing to diligently investigate the crime did constitute adverse action against the plaintiff.

On the other hand, in *Mezibov*, a prosecutor's statements to the press that a defense attorney was ineffective, looking for a show trial and that the client should ask for his money back were not found to amount to an adverse action despite the court assuming for the purposes of its analysis that the statements were defamatory.  411 F.3d at 722-723.  Defendant Hudson's statements were more similar in kind to, and are probably less objectionable than, those in *Mezibov* rather than those in *Bloch* because they were not highly embarrassing nor did they impugn Plaintiff's character.  While Defendant Hudson's allegedly false claim that there was a petition in the neighborhood against Plaintiff might be sufficient to state a claim of defamation under Michigan law, as might the allegedly false claim that she was violating township ordinances, these potentially defamatory statements were not of such a character that they amounted to an adverse action taken on their own.

Some of the alleged content of Defendant Hudson's conversations with Plaintiff's employer expressed Hudson's opinion of her speech and his opinion of its effect on her reputation in Comstock.  That kind of speech is probably most akin to protected speech under the First Amendment, falling under Defendant Hudson's right to respond to Plaintiff's criticisms that were made in the public sphere.  *Samad v. Jenkins,* 845 F.2d 660, 663 (6th Cir. 1988) ("Ironically, plaintiff is accusing defendants of chilling his first amendment freedoms by reserving their own first amendment right to speak out.").

Plaintiff argues that because Defendant Hudson's speech was not of a similar type – part of a public meeting or in the press – that it should not qualify as responding to her exercise of her First Amendment rights.  (Appellant's Br. at 18-19).  This argument has some merit since a right to respond is usually in a similar forum and often

is in direct response to the other party, but the fact that Defendant Hudson's speech was not in a public forum does not divorce it from First Amendment protection, especially if it remains focused on an issue of public concern. *See Belk v. City of Eldon*, 228 F.3d 872, 879-880 (8th Cir. 2000) (a private conversation with a public official may be afforded First Amendment protection, especially concerning a matter of public concern).

However, regardless of whether Defendant Hudson's alleged defamatory speech is properly understood as falling within the constitutionally protected right to respond, Plaintiff has alleged more than a mere conclusory allegation that Defendant Hudson attempted to threaten her business relationship with Farm Bureau rather than simply express his opinion of her reputation in the community or to exercise his right of reply. Negative comments made by Defendant Hudson, especially about the possible damage to Farm Bureau's business, are sufficient to rise to the level of "a threat to take action tangibly affecting employment status." *Samad*, 845 F.2d at 663. After the conversations, Plaintiff's employer requested that she change her behavior in the community, and ultimately Farm Bureau terminated its contract with Plaintiff. While these factual allegations are not directly relevant to whether Comstock officials took actions that are cognizable as an adverse action, these facts do support Plaintiff's theory that Defendant Hudson's statements were designed to threaten her economic livelihood. Since few aspects of one's life are more important than gainful employment, it is likely that a person of ordinary firmness would be deterred by this conduct.

### ii. Defendants' Denial of Plaintiff's Requests for Zoning and Signage Variances

Plaintiff alleges that not only Defendant Hudson's statements, but also the actions of the other Comstock Defendants, constituted an adverse action because they collectively threatened her economic livelihood. A final allegation in Plaintiff's complaint, which the district court ignored, bolsters her retaliation claim – Plaintiff alleges that the Zoning Board of Appeals denied her request for zoning and signage variances in retaliation for "her speech and conduct at [C]omstock meetings and her petitioning Comstock for a redress of grievances." (Dist. Ct. Doc. No. 1, Compl. ¶ 21). The denial of the variances directly impacts Plaintiff's ability to conduct her business

in the manner of her choosing, which is a threat to her economic livelihood. Therefore, this action alone is probably sufficient to state a claim of retaliation inasmuch as the possibility of a zoning variance or a signage variance necessary for operating a business as planned would deter a person of ordinary firmness from exercising First Amendment rights.

On the other hand, Plaintiff continued to publicly criticize Comstock officials and attend public meetings after her variances were denied, after the conversations with her employer, and after her termination from Farm Bureau, which suggests that Plaintiff herself was neither deterred nor chilled from speaking. However, the test is whether a person of ordinary firmness would be deterred; actual deterrence on the part of the plaintiff is not necessary to state a claim of an adverse action, *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). This Circuit has previously held that "we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred. *Mezibov*, 411 F.3d at 721 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). But a credible threat to the nature and existence of one's ongoing employment is of a similar character to the other recognized forms of adverse action – termination, refusal to hire, etc. – even if perpetrated by a third party who is not the employer.

From some of the factual allegations in Plaintiff's complaint, this Court notes that it is possible that the more immediate and serious threat to Plaintiff's economic well-being was that she did not follow her employer's instructions to change her behavior in the community, rather than that Defendant Hudson or other Comstock officials spoke with her employer about her actions in Comstock or denied her variances. However, under the *Iqbal* pleading standard, 129 S.Ct. at 1949-50, Plaintiff has plausibly alleged in her pleadings adverse actions on the part of the Defendants that would deter a person of ordinary firmness from exercising their First Amendment rights – a threat to her economic livelihood directly traceable to Defendants' conduct based on her factual allegations regarding the conversations and the denial of variances. Therefore, we

conclude that the district court erred in ruling that she had not alleged an adverse action on the motion to dismiss.

### c.	Defendants' Alleged Adverse Actions Were Motivated by Plaintiff's Protected Conduct

Plaintiff has pled sufficient facts to support a claim of adverse action and so should have prevailed on the motion to dismiss as to whether she stated a claim under 42 U.S.C. § 1983 for unlawful retaliation since she has also sufficiently alleged that these adverse actions were motivated, at least in part, by her protected conduct. It is difficult to imagine any analysis of Defendant Hudson's discussions with Plaintiff's employer that would not find his speech to be at least motivated in part, if not entirely, by Plaintiff's protected conduct.[5] Additionally, Plaintiff has sufficiently alleged that the denial of her zoning and signage variances was motivated at least in part by her protected conduct at public meetings. Therefore, Plaintiff's complaint is sufficient to show that she was engaging in protected conduct, that the Comstock Defendants took adverse action against her that would deter a person of ordinary firmness from engaging in that conduct, and that the adverse action was motivated at least in part by her protected conduct.

### CONCLUSION

Because Plaintiff's factual allegations are sufficient to raise more than a mere possibility of unlawful First Amendment retaliation on the part of the Defendants, the district court erred in granting the motion to dismiss on the pleadings as to that part of the complaint. Therefore, we **REVERSE** the district court's order granting in part Defendant's Motion for Summary Judgment regarding the First Amendment retaliation claim and **REMAND** for further proceedings consistent with this opinion.

---

[5]Whether Defendant Hudson's comments are protected by the First Amendment is an issue that this Court cannot resolve at this stage of the litigation because further discovery to elucidate the content of the conversations may be necessary for the analysis. To the extent that his comments to Plaintiff's employer were an exercise of his right of reply under the First Amendment, he could not be liable for retaliation based on that speech. *See Samad*, 845 F.2d at 663.

---

**DISSENT**

---

RYAN, Circuit Judge, dissenting.   I respectfully disagree with the majority opinion, precisely for the reasons stated by District Judge Robert Holmes Bell in his solidly reasoned and well-written opinion holding that the plaintiff has not alleged an actionable claim of a violation of her constitutional rights.

I would affirm the district court's judgment.