**UNITED STATES of America, State of Tennessee, ex rel. Debra Norris, Plaintiffs**

v.

**Matthew ANDERSON, David Florence, Cindy Scott, Cookeville Center for Pain Management, Preferred Pain Center of Grundy County, McMinnville Pain Relief Center, and PMC Management, LLC, Defendants**

NO. 2:13–cv–00035

United States District Court, M.D. Tennessee, Cookeville Division.

Filed 09/07/2017

952

Ellen Bowden McIntyre, Office of the United States Attorney, Elijah W. Swiney, Philip H. Bangle, Tennessee Attorney General's Office, Robert A. Peal, William J. Harbison, II, Neal & Harwell, PLC, Nashville, TN, for Plaintiffs.

Jason Richard Edgecombe, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Atlanta, GA, Joy Boyd Longnecker, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, J. Alex Little, Raquel L. Bellamy, Bone, McAllester & Norton, PLLC, Nashville, TN, C. Eugene Shiles, Spears, Moore, Rebman & Williams, Chattanooga, TN, Thomas H. Barnard, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

WAVERLY D. CRENSHAW, JR., CHIEF UNITED STATES DISTRICT JUDGE

Pending before the Court is a Motion to Dismiss the Amended Complaint in Intervention (Doc. No. 82), filed by Defendants Anderson and PMC Management, LLC ("PMC") (together, "Defendants").[1] For the reasons stated herein, the Motion to Dismiss will be granted in part and denied in part as set forth below.

1. On April 28, 2017, the Court dismissed 26 Defendants who were named in the original Complaint but not in the Amended Complaint in Intervention. (Doc. No. 137.) On July 27, 2017, the Court dismissed the three Defendant pain clinics (Cookeville Center for Pain Management, P.C., Preferred Pain Center of Grundy County, P.C., and McMinnville Pain Relief Center, P.C.). (Doc. No. 148.) The remaining Defendants are Anderson, Scott, Florence and PMC Management, LLC.

## FACTS

This action arises from alleged false and fraudulent healthcare claims submitted to the United States and the State of Tennessee by Defendants, in violation of the False Claims Act ("FCA") and the Tennessee Medicaid False Claims Act ("TMFCA"), and also alleged violations of the Controlled Substance Act ("CSA") by Defendants. The original Complaint (Doc. No. 1) was filed by Relator Norris on May 3, 2013, against more than 30 Defendants. In late 2015, both the United States and Tennessee filed Notices of Election to Intervene in Part and to Decline to Intervene in Part (Doc. Nos. 30–31). On August 3, 2016, the United States and Tennessee[1] (together, "the Government") filed an Amended Complaint in Intervention against seven Defendants (Doc. No. 77), and that Amended Complaint is the subject of the pending Motion to Dismiss.

The Government alleges that, from Spring of 2012 until January of 2014, Defendant Anderson, acting personally and then through his alter ego company, PCM, masterminded a scheme to falsely obtain money from government health care programs by creating a group of four pain management clinics that he and his management company, PMC, controlled, but that a string of sham physician owners purportedly owned. These clinics then allegedly caused the submission of false claims for payment to Medicare and TennCare. (Doc. No. 77 at 2.) The Amended Complaint in Intervention sets forth six counts: (1) false or fraudulent claims to Medicare; (2) false statements to Medicare; (3) payment by mistake of fact, (4) unjust enrichment, (5) violations of the CSA, and (6) false or fraudulent claims to TennCare.

Anderson and PMC contend that the Amended Complaint in Intervention fails to plead a violation of the FCA with particularity and fails to state a claim upon which relief can be granted against them. They maintain that (1) they were in only a management relationship with the pain clinics and cannot be liable for any alleged violation of Medicare or TennCare by those pain clinics; (2) that the CSA provision upon which the Government relies does not apply to Defendants; (3) that Defendants cannot be liable for the physicians' alleged failures to discharge their supervisory and other responsibilities at the pain clinics; (4) that the Government has not sufficiently pled its common law claims; and (5) that Defendants cannot be liable for the submission of false or fraudulent claims under a "shadow ownership" theory of liability. (Doc. No. 82.)

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

FALSE CLAIMS ACT

The FCA penalizes any person who knowingly presents, or causes to be presented, to an officer or employee of the U.S. government a false or fraudulent claim for payment or approval. Chesbrough v. VPA, P.C., 655 F.3d 461, 466 (6th Cir. 2011) (citing 31 U.S.C. § 3729(a)(1)). It also penalizes any person who knowingly[2] makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government. Id. A private individual, known as a realtor, may bring a civil action for a violation of the FCA, also known as a *qui tam* action, on behalf of the government. 31 U.S.C. § 3730(b)(1). The relator must serve a copy of the complaint upon the government, which may elect to intervene and proceed with the action. 31 U.S.C. § 3730(b)(2). The complaint is filed *in camera* and remains under seal for at least 60 days, and shall not be served on the defendant until the court so orders. Id. If the government intervenes and proceeds with the action, it has the primary responsibility for prosecuting the action. If the government elects not to proceed with the action, the relator has the right to conduct the action. 31 U.S.C. § 3730(c)(1) and (3).

Similarly, the TMFCA penalizes any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval under the Medicaid program or knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim under the Medicaid program. Tenn. Code Ann. § 71–5–182. In Tennessee, the Medicaid program is administered through TennCare. Tenn. Code Ann. § 71–5–101, et seq.

Complaints alleging FCA violations must comply with Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled with particularity. Chesbrough, 655 F.3d at 466. Rule 9(b) requires that in alleging fraud, a party must state with particularity the circumstances constituting fraud. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally. Id. In complying with Rule 9(b), a relator or the government, at a minimum, must allege the time, place and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent of the defendant and the injury resulting from the fraud. Id. at 467.

When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but it is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct. United States ex rel. Simmons v. Meridian Surgical Partners, LLC, 2013 WL 4098663 at *2 (M.D. Tenn. May 2, 2013) (citing United States ex rel. Bledsoe v. Community Health Systems, Inc., 501 F.3d 493, 503 (6th Cir. 2007)).

The relator or the government must plead with sufficient particularity that the defendant knowingly presented or caused to be presented to the U.S. government a false or fraudulent claim for payment or approval. McFeeters v. Northwest Hospital, LLC, 2015 WL 328212 at *2 (M.D. Tenn. Jan. 23, 2015). The submission of a false claim for payment converts an improper financial relationship into an act of fraud upon the government and forms the basis of the cause of action. Id. at *4. Therefore, the Sixth Circuit imposes a strict requirement that an FCA complaint

---

**2.** "Knowingly" is defined as having actual knowledge of the information, acting in deliberate ignorance of the truth or falsity of the information, or acting in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). There is no requirement to show specific intent to defraud. Id.

identify actual false claims. Id. (citing Chesbrough).

To prevail on an FCA claim under 31 U.S.C. § 3729, a relator or the government must show: (1) a false or fraudulent claim (2) that was material to the decision-making process (3) which the defendant presented or caused to be presented to the government for payment or approval (4) with knowledge that the claim was false or fraudulent. United States v. Celgene Corp., 226 F.Supp.3d 1032, 1037 (C.D. Cal. 2016); 31 U.S.C. § 3729(a)(1)(A).

## ANALYSIS

### 1. False Claims Acts

■ The Government has alleged that, in order to obtain Medicare and Medicaid reimbursements, healthcare providers must submit claim forms with specific information, including identification of the services rendered and for which reimbursement is sought. (Doc. No. 77 at 8–9.) The Government contends that Defendants intentionally used improper Current Procedural Terminology ("CPT") codes when seeking reimbursement from Medicare. More specifically, the Government asserts that the codes for seeking reimbursement for office visits with established patients range from 99211 through 99215 for Evaluation and Management ("E & M") services. Id. at 9. The Government further alleges that to be paid for CPT code 99214, the office visit must have had at least two of these three key components: a detailed history, a detailed examination, and/or medical decision-making of moderate complexity. Such office visits usually involve moderate to high severity problems and last for 25 minutes. Id. The Government also asserts that when a medically necessary, significant, and separately identifiable E & M service is performed along with a drug administration (such as an injection), the appropriate Medicare code should be reported with a modifier -25.

The Government alleges that Defendants caused Medicare claims to be coded as 99214 with the modifier -25 when those claims were not payable as such. Id. at 47.

The Government claims that Defendant Anderson instructed the billing employees at the pain management clinics to bill Medicare using CPT code 99214, instead of a lower CPT code, for all established patient office visits. The Government contends that, when questioned about the appropriateness of this billing code, Anderson again told employees to "upcode;" that is, to use the 99214 code, even though he knew that the clinics had not provided patients with services that were reimbursable under that CPT code. (Doc. No. 77 at 36–37.) The Government alleges that, from May through December 2013, Defendants instructed pain clinic employees to bill all office visits with the 99214 code, while knowing that the clinics had not provided services payable under that code. Id.

Defendants argue that they simply managed the pain management clinics and, therefore, they cannot be liable for any alleged wrongful "upcoding" by those clinics in claims to Medicare. Defendants assert that neither Anderson nor PMC ever presented any claims for payment to Medicare or TennCare. The Amended Complaint alleges, however, that Anderson and PMC "caused" false claims to be presented. The Government avers that Anderson, individually or through PMC, oversaw all Medicare and TennCare billing at the four pain management clinics and caused the submission of false claims for reimbursement to Medicare and TennCare. (Doc. No. 77 at 31.)

Defendants also argue that the Government has not sufficiently alleged that Defendants directed or caused any clinics to use the 99214 billing code *improperly*. The Government has alleged, however, that

Defendants specifically caused claims to be submitted with the CPT code 99214 when those claims were not payable as such. (Doc. No. 77 at 47.) The Amended Complaint also alleges that Defendants caused false statements to be made to Medicare regarding claims with the 99214 CPT code. Id.

 In order to receive reimbursement from Medicare, Defendants were required by federal regulation to certify to the accuracy, completeness and truthfulness of all data related to the payment. 42 C.F.R. 423.505(k). Under the FCA, when a claim expressly states that it complies with a particular statute, regulation, or contractual term that is a prerequisite for payment, failure to actually comply would render the claim fraudulent under a "false certification" theory. Chesbrough, 655 F.3d at 467. The Government contends that Defendants falsely certified claims by failing to disclose that nurse practitioners in the pain management clinics were not supervised as required by law. Medicare covers services furnished by nurse practitioners who are authorized to practice by the State where the services are rendered and when the nurse practitioner works in collaboration with a physician. 42 C.F.R. § 410.75. "Collaboration" is a process in which a nurse practitioner works with one or more physicians to deliver health care services within the scope of the practitioner's expertise with medical direction and appropriate supervision as provided for in jointly developed guidelines or other mechanisms as provided by the law of the State in which the services are performed. Id.

The Government alleges that, although he knew about Tennessee law concerning nurse practitioners, Anderson designated physicians as medical directors at two of the pain management clinics (Cookeville and Harriman) who did not supervise the nurse practitioners, did not review their patient charts, did not consult with the nurse practitioners before they prescribed controlled substances, and, in fact, were not even on-site for the required number of hours each week. (Doc. No. 77 at 37–40.) Moreover, the Government alleges that Anderson caused false claims to be submitted without disclosing that the nurse practitioners were not properly supervised. For example, the Government identifies two specific patients whose claims were allegedly improperly submitted to Medicare for services which the nurse practitioners could not lawfully perform without supervision. (Doc. No. 77 at 45–46.) The Amended Complaint also alleges that Medicare would not have paid for the medications and services provided by nurse practitioners in violation of State law if those facts had been disclosed. Id. at 40.

In Tennessee, a nurse practitioner may not prescribe Schedules II, III and IV controlled substances unless the prescription is specifically authorized by the formulary[3] or expressly approved after consultation with the collaborating physician before the initial issuance of the prescription or dispensing of the medication. Tenn. Code Ann. § 63–7–123(b)(2)(B). The Government contends that Medicare only covers drugs that are used for a medically accepted indication,[4] and that claims submitted to the Government for drugs that do not have a medically accepted indication do not contain accurate, complete and truthful information about all data related

---

3. Nurse practitioners must file, with the state board of nursing, a copy of a formulary describing the categories of legend drugs to be prescribed and/or issued by the nurse practitioner. Tenn. Code Ann. § 63–7–123(b)(1).

4. A drug must be prescribed for a "medically accepted indication" in order to be reimbursable by Medicare. Celgene, 226 F.Supp.3d at 1048; 42 U.S.C. § 1395w–102(e)(1); 42 U.S.C. § 1396r–8(k)(6).

to payment. Similarly, TennCare only pays for "medically necessary" drugs. Tenn. Code Ann. § 71–5–144(a)(2).

The Amended Complaint asserts that Defendants caused certain patients to fill prescriptions for Schedule II through V narcotics (that Medicare and TennCare paid for) that were not used for an accepted medical indication, that lacked a legitimate medical purpose, and that were not approved after consultation with a physician. (Doc. No. 77 at 32–36 and 41–45.) The Government identifies, as examples, specific patients for whom Defendants submitted false claims with regard to illegitimate prescriptions. Id.

Defendants argue that responsibility for supervision of nurse practitioners in Tennessee is clearly placed on the physicians, not on Defendants. The Government does not contend that Defendants themselves failed to supervise the nurse practitioners, however. It alleges that Defendants certified claims to the Government that were false because nurse practitioners were not properly supervised. As noted above, Defendants were required by federal regulation to certify to the accuracy, completeness and truthfulness of all data related to the requested Medicare payment. 42 C.F.R. § 423.505(k). Failure to disclose non-compliance with statutes or regulations makes representations misleading half-truths. Celgene, 226 F.Supp.3d at 1044.

The Government has sufficiently asserted that Defendants caused false claims for drugs to be submitted to Medicare, knowing that the drugs were not dispensed upon a valid prescription and in accordance with State law, and therefore, Defendants inaccurately certified to the Government that the drugs were reimbursable.[5] See United States ex rel. Buth v. Pharmerica Corp., 2014 WL 4355342 at *5 (E.D. Wis. Sept. 3, 2014). Where a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided. Universal Health Servs., Inc. v. United States, —— U.S. ——, 136 S.Ct. 1989, 1995 and 1999, 195 L.Ed.2d 348 (2016).[6] The Supreme Court also held that the FCA does not limit liability only to instances where the defendant fails to disclose the violation of a contractual, statutory, or regulatory provision that the government expressly designated as a condition of payment. Id. at 2001.

The Court finds that the Government has sufficiently alleged, with the required particularity, its claims for alleged violations of the False Claims Act and the TMFCA. The Amended Complaint includes an Exhibit identifying specific allegedly false claims that were presented to the Government for payment. (Doc. No. 77, Ex. 1.) In addition, the Amended Complaint specifically describes 14 allegedly false claims submitted by Defendants to the government for payment. (Doc. No. 77 at 41–46.) The Amended Complaint, which must be accepted as true for purposes of this motion, has set forth sufficiently de-

5. Defendants argue that enforcement of regulations is outside the scope of the FCA, but the Government is not seeking enforcement of these regulations; the Government is alleging false statements and false claims to the Government because of regulation violations.

6. For example, when Defendants submitted claims under the wrong codes, they represented that they had complied with the requirements for reimbursement under those codes. When they submitted claims concerning drug prescriptions, they represented that they had complied with the requirements concerning prescription drugs and that those prescriptions were reimbursable under Medicare and TennCare.

tailed allegations that false claims were presented as a result of Defendants' conduct. Defendants' Motion to Dismiss the FCA and TMFCA claims will be denied.

2. Controlled Substances Act

The Government also asserts that Defendants violated the CSA, specifically 21 U.S.C. § 842, that provides that it is unlawful for any person who is subject to the requirements of part C of the statute to distribute or dispense a controlled substance in violation of section 829 of the statute. Section 829 of the CSA prohibits the dispensing of any Schedule II through V controlled substances without a valid prescription that was issued for a legitimate medical purpose as provided in the statute. 21 U.S.C. § 829. The Amended Complaint avers that Defendants caused pharmacies to fail to comply with the requirements of the CSA by dispensing Schedule II through V controlled substances without a valid prescription that was issued for a legitimate medical purpose. The Government also asserts that these prescriptions did not comply with Tennessee law concerning the supervision of nurse practitioners. (Doc. No. 77 at 50.)

Defendants argue that they cannot be in violation of Section 842 because they are not "subject to the requirements of Part C." Part C of the CSA is titled "Registration of Manufacturers, Distributors, and Dispensers of Controlled Substances." 21 U.S.C. § 821, et seq. The persons required to register under Part C are persons who manufacture or distribute controlled substances and persons who dispense, or who propose to dispense, controlled substances.

21 U.S.C. § 822(a)(1) and (2). One exception to the registration requirement is an agent or employee of any registered manufacturer, distributor or dispenser of controlled substances if such agent or employee is acting in the usual course of his business or employment. 21 U.S.C. § 822(c)(1).[7] The federal regulations explain that "only persons actually engaged in such activities are required to obtain a registration; related or affiliated persons who are not engaged in such activities are not required to be registered." 21 C.F.R. § 1301.11(a).

"Dispense" is defined in the CSA as to deliver a controlled substance to an ultimate user by, or pursuant to the lawful order of, a practitioner. 21 U.S.C. § 802(10). "Deliver" means the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship. 21 U.S.C. § 802(8). Defendants argue they did not dispense or deliver controlled substances, so they are not subject to the provisions of Section 842.

Here, pharmacists actually "dispensed" the controlled substances to the ultimate users. The Amended Complaint does not allege sufficient facts to show that Defendants Anderson or PMC dispensed (as that term is defined in the CSA) the allegedly illegal controlled substances to the ultimate users. Even if Defendants "caused" the prescriptions to be written, they did not dispense or deliver the drugs to the ultimate users.[8] Defendants' Motion to Dismiss the CSA claims will be granted.

7. Similarly, the federal regulations provide that the requirement of registration is waived for any agent or employee of a person who is registered to engage in any group of independent activities, if such agent or employee is acting in the usual course of his/her business or employment. 21 C.F.R. § 1301.22(a).

8. The Government's contention that Section 842(a)(1) also reaches non-registrants does not change this result. Defendants may have presented false claims because of illegal prescriptions, but the Government has not sufficiently alleged that Defendants actually dispensed or delivered controlled substances.

### 3. Common Law Claims

The Amended Complaint alleges that Defendants are also liable for the common law claims of payment by mistake and unjust enrichment. Under the common law theory of payment by mistake, the Government may recover money it mistakenly, erroneously, or illegally paid from a party that received the funds without right. United States v. Houston, 2011 WL 4899983 at *6 (M.D. Tenn. Oct. 14, 2011). The parties receiving monies from the Government under mistake of fact or law are liable to refund them. United States ex rel. Martin v. Life Care Centers of America, Inc., 2014 WL 11429265 at *14 (E.D. Tenn. March 26, 2014). The elements for a common law payment by mistake claim are (1) a payment was made; (2) the payment was made based on a mistake, error, or it was illegally made; and (3) the party receiving the payment did not have the right to the payment. Id. (citing Houston at *6).

The Government also alleges an unjust enrichment claim, based upon Defendants' retaining monies paid by Medicare and TennCare to which they were not entitled. Under Tennessee law, the elements of a claim for unjust enrichment are (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; (3) acceptance of such benefit under such circumstances that it would be inequitable for defendant to retain the benefit. Life Centers at *14; United States v. Goforth, 465 F.3d 730, 733 (6th Cir. 2006).

Defendants again argue that they did not submit any claims to Medicare or TennCare or receive any reimbursement for clinical services or prescriptions. But the Amended Complaint alleges that Defendants caused the submission of false claims and requests for payment to the Government. The Government paid those false claims to the pain management clinics that were "owned and controlled" by Defendant Anderson and PMC. To the extent Defendants were not entitled to those payments, the Government has sufficiently asserted a payment by mistake claim and an unjust enrichment claim.

### 4. Shadow Ownership

The Government has not asserted a cause of action for shadow ownership. The Government alleges factual context for its claims and contends that Defendant Anderson, individually and through his "alter ego," PMC, owned and/or controlled the four pain management clinics and reaped the benefits of monies received by those clinics. These facts in the Amended Complaint are sufficiently alleged and must be accepted as true for purposes of this motion.

### CONCLUSION

For all these reasons, Defendants' Motion to Dismiss (Doc. No. 82) will be **GRANTED** in part and **DENIED** in part. The Government's claims against Defendants Anderson and PMC Management for violations of the Controlled Substances Act will be **DISMISSED**.