NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0515n.06

No. 11-1084

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 17, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| VERN A. GUINDON; | ) | |
| CAROLE L. GUINDON | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TOWNSHIP OF DUNDEEE, MICHIGAN; | ) | COURT FOR THE EASTERN |
| JOANNA UHL; TIRA LUPA; LINDA | ) | DISTRICT OF MICHIGAN |
| SONTAG; MARILYN LARSON; TOM | ) | |
| WINKELMAN; ROLLO JUCKETTE; | ) | |
| GARY LAZETTE; ART BRONSON; | ) | |
| JEANETTE BROCKMAN; ED PROCTOR; | ) | |
| GEORGE HORKEY; CHUCK RUEHS; | ) | |
| ROBERT MADASKI; EDWIN A. | ) | |
| BARANOWSKI, in their official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: BOGGS, SUHRHEINRICH, and COOK; Circuit Judges.

SUHRHEINRICH, Circuit Judge. Plaintiffs-Appellants Vern A. Guindon ("Guindon")

and Carole L. Guindon ("Carole") (collectively "Plaintiffs") appeal from the order of the district

court granting summary judgment to Defendants-Appellees the Township of Dundee, Michigan (the

"Township") and various members of the Township Board of Trustees. The action arises out of a

series of disputes related to land use of both Plaintiffs' properties and of properties adjacent to or

near Plaintiffs' property. We AFFIRM.

1

## I. Background

Plaintiffs, husband and wife, are residents of the Township of Dundee in Monroe County, Michigan. They have lived in Dundee Township since 1988 and have lived at their current property on Wilcox Road since 1996 (the "20-acre parcel"). The area at issue is an agricultural zoning district.

In 1999, Charles and Cindy Hiteshew purchased a lot adjacent to Plaintiffs' property and began building a house. Guindon suspected that the lot would be used to operate a trucking business, and contacted Defendant Edwin Baranowski, Dundee Township building inspector. Guindon also voiced his concerns during the public-comment portion of the Township Board meetings in later 1999 and early 2000. The Township Board instructed Baranowski and the Township attorney to send violation letters, but by early 2001 the Township had stopped monitoring the situation, and the Hiteshews resumed operation of the trucking terminal.

In early 2002, Guindon hired an attorney, W. Thomas Graham, who sent a letter to the Township Board, urging it to enforce the applicable ordinances. Sometime after this letter, Township Supervisor Joanna Uhl allegedly told Guindon that he could no longer discuss the Hiteshews during the public comment portion of the Township Board meetings, and that any further complaints would only be heard through his attorneys.

On April 17, 2002, the Township filed suit against the Hiteshews in state court. On August 30, 2002, the Township was awarded a permanent injunction prohibiting the Hiteshews from operating a trucking terminal in the agricultural zoning district. Guindon nonetheless continued to complain, through his attorney, at Township Board meetings that the injunction was not being enforced. Supervisor Uhl stated at a Township Board meeting that the Township did not have the

resources to seek out violations of the zoning ordinances and would only respond to specific complaints made to the ordinance officer. A newspaper account of the January 28, 2003 Township Board meeting quoted Supervisor Uhl as stating that "We don't have enough money to press every situation to the limit . . . . We have services to provide. When you came here with a violation before, it was clear how it impacted you; this information [presented to the Township Board] doesn't explain that." By 2004, the Hiteshews were no longer operating any trucking business from their property in Dundee.

In the meantime, around late 2002, Guindon and some neighbors complained that Mark and Brenda York, whose property is adjacent to Hiteshew's property and several hundred feet from Plaintiffs' land, were operating a commercial trucking terminal and landscaping supply business, in violation of the zoning ordinances for the agricultural district. Guindon and the neighbors submitted evidence to the Township Board. The Board took action in March 2003. The Board and the Yorks entered into a Letter of Understanding, whereby the Yorks attested that their business was a nursery, which is permitted in the agricultural-zoned district, and not a commercial trucking business. Guindon nonetheless argued that the Yorks were operating a truck terminal, and alleged that the Yorks had obtained a Michigan Public Service Commission license to operate a trucking terminal at their property after they signed the Letter of Understanding. The Township took no further action against the Yorks, however.

On October 4, 2004, Guindon asked the Township Board to be included on the agenda of the October 12, 2004 Board meeting. The Board denied his request.

In October 2005, Plaintiffs bought an 11.321 acre-parcel (the "11-acre parcel") of land in Dundee Township from the Monroe County Road Commission for $45,000. The 11-acre parcel is

adjacent to the 20-acre parcel, being separated by an eighteen-foot wide gravel chip easement, and is zoned for agricultural use. The 11-acre parcel is connected to M-50 by that same easement. In late 2005, Plaintiffs sought a building permit to construct a house on the parcel from Defendant Baranowski, the Township's building inspector. The zoning ordinance permits residences to be built on agricultural-zoned property. Baranowski denied the request on the ground that the property did not abut a public street, road, or highway as required by Section 5.11 of the Zoning Ordinances.[1] Plaintiffs did not seek a variance, but appealed the decision denying them a building permit to the Township's Zoning Board of Appeals. On March 26, 2006, the Zoning Board of Appeals affirmed the denial of the building permit. Plaintiffs appealed that decision to the Monroe County Circuit Court. On February 5, 2008, the circuit court ruled that the Zoning Board of Appeals had not abused its discretion, and affirmed the decision of the Township.

On January 4, 2007, Plaintiffs submitted a written request to the Township to transfer the 20-acre parcel from the Township's jurisdiction to the jurisdiction of the Village of Dundee, pursuant to 1984 PA 425, Mich. Comp. Laws § 124.21 *et seq.*, ("Act 425"), which authorizes the conditional transfer of property between two or more cities, townships, and villages for an economic development project. Mich. Comp. Laws § 124.22(1). On January 9, 2008, the Township decided

---

[1]Section 5.11 provides:

No dwelling or building shall be erected on any lot or parcel of land in the Township of Dundee that does not abut on a public street, road or highway, provided that this Ordinance shall not be the basis for preventing the issuance of a building permit for the ordinary repair or maintenance of any building that is already erected on the date of the adoption of this Ordinance upon a lot or parcel of land that does not so abut such a street or highway.

at its public meeting to put the negotiations on hold, pending resolution of a lawsuit Guindon had filed.

## A. Procedural History

On April 21, 2009, Plaintiffs filed suit pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, against Dundee Township, members of the Township Planning Commission and the Township building inspectors, in their official and individual capacities, alleging that Defendants violated their constitutional rights by failing to enforce zoning ordinances against Plaintiffs' neighbors, by denying them a building permit, and by delaying consideration of their request to transfer land to the Village of Dundee. Count I alleged that the Defendants deliberately violated Plaintiffs' rights under the Takings Clause of the Fifth Amendment, the First Amendment right to free speech, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, all in violation of 42 U.S.C. § 1983. Plaintiffs also alleged that the Defendants retaliated against them for exercising their First Amendment rights to petition the government. In Count II, Plaintiffs raised a facial challenge to the Dundee Township zoning ordinance as unconstitutionally vague. Count III alleged that Defendants acted with common purpose to deprive Plaintiffs of their federal rights under the First Amendment, the Due Process Clause, and the Equal Protection Clause, all in violation of 42 U.S.C. § 1985(3). In Count IV, Plaintiffs alleged that Defendants failed to prevent these constitutional violations, in violation of 42 U.S.C. § 1986. In Count V, Plaintiffs claimed that Defendants violated the Michigan Right to Farm Act. Plaintiffs sought a declaratory judgment, an injunction, and damages.

Defendants moved for summary judgment. Plaintiffs filed a response. The district court ordered supplemental briefing from Plaintiffs to clarify the specific factual bases for each of the claims alleged in Counts III, IV, and V. On December 23, 2010, the district court granted summary

judgment to Defendants. First, the district court dismissed the Planning Commission Defendants, because Plaintiffs had failed to allege how the Planning Commission or its members violated Plaintiffs' constitutional rights in their purely advisory role. Next, the district court granted legislative immunity for the legislative acts of enacting, amending, and enforcing the zoning amendments, as well as the Township's management of Board meetings. As for the remaining claims arising from the Board's executive or administrative or discretionary functions related to the processing of Plaintiffs' land transfer request, the court granted qualified immunity to the Township Board Defendants and Baranowski.

The district court then dismissed Plaintiffs' First Amendment retaliation claims. Regarding the delay of consideration of their land-transfer request, the court held that Plaintiffs offered no support to show that Defendants were motivated by the filing of the suit itself, rather than the impact of the lawsuit on the uses of land adjoining the land the Plaintiffs' sought to have transferred. Regarding Plaintiffs' denial-of-review claim, the court noted that Plaintiffs failed to provide copies of requests or other supporting facts to show that the Board refused to take any action on Plaintiffs' three separate written requests for review of the denial of their building permit. The court also rejected Plaintiffs' claim that Defendants retaliated against them by directing third parties not to do business with Guindon because he had filed suit against Defendants, because the only evidence presented was an out-of-court statement by an anonymous Village employee, which was inadmissible hearsay under Fed. R. Evid. 801, 802.

The district court dismissed Plaintiffs' equal-protection claim because Plaintiffs did not provide any factual support for their claim that similarly situated residents had been granted land transfers.

The court dismissed Plaintiffs' due-process claim because Plaintiffs failed to provide any additional factual bases to support their substantive and procedural due-process claims. Because the court had dismissed all claims asserting violations of Plaintiffs' individual constitutional rights, it declined to address the Defendant building inspectors' defense of qualified immunity.

Next, the district court considered Plaintiffs' claims, brought pursuant to §§ 1985(3) and 1986, that Defendants conspired to deprive Plaintiffs of their constitutional rights and failed to prevent a conspiracy to violate their constitutional rights (Counts II and IV). The district court dismissed these claims on the ground that Plaintiffs failed to allege any facts to suggest that Defendants entered into such a conspiracy.

The district court rejected Plaintiffs' claim that the Township zoning ordinance related to the building of structures is unconstitutionally vague. The court rejected Plaintiffs' argument that the sections relating to "buildable lots" and "area requirements" conflict with each other because Plaintiffs did not explain or provide any factual support for the alleged conflict. The court also rejected Plaintiffs' claim that the terms "public street, road or highway" in ordinance 5.11 were vague, because a person of ordinary intelligence could understand that use of the terms "public road" in the ordinance clearly prohibited construction of a dwelling that only abutted a private right-of-way.

The court also rejected Plaintiffs' argument that Defendants violated the Michigan Right to Farm Act, Mich. Comp. Laws § 286.471 *et seq*., by not letting them build a barn. The court found no evidence to show that Defendants ever told Guindon he could not build a barn.

The court therefore granted Defendants' motion for summary judgment and dismissed Plaintiffs' complaint. This appeal followed.

## II. Analysis

This court reviews a district court's grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Immunity[2]

### 1. Legislative Immunity

Defendants maintain that they are entitled to absolute legislative immunity for all claims arising out of the exercise of their legislative duties.[3] Local legislators are absolutely immune from liability when they act in their legislative capacities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Legislative immunity applies to "all actions taken in the sphere of legitimate legislative activity." *Id.* (internal quotation marks and citation omitted). Whether an act is legislative depends on the nature of the act, rather than the official's motive or intent. *Id.* A court must consider first whether the acts were legislative in form, i.e., whether "they were integral steps in the legislative process." *Id.* at 55. Second, a court must consider whether the defendant's acts were "legislative in substance," i.e. whether they "bore all the hallmarks of traditional legislation," including "a discretionary,

---

[2]Plaintiffs do not appear to challenge the district court's dismissal of the Township Planning Commission Defendants. In any event, we agree with the district court that Plaintiffs failed to show how these defendants, in their purely advisory role, violated Plaintiffs' constitutional rights. We therefore affirm this ruling for the reasons stated by the district court in its December 23, 2010 opinion.

[3]The Township Board has administrative, *see* Mich. Comp. Laws § 41.1a *et seq.*, and legislative powers, *id.* § 41.70.

policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55-56. But, as this court has observed, "the various activities of most local or municipal officials cannot be characterized as only administrative, legislative, or judicial. Instead, the scope of immunity depends on the nature of the activity involved." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1277-78 (6th Cir. 1988); *see also Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011) (en banc) ("When examining the activities of an entity such as the Board, we find little guidance in formalistic distinctions between 'legislative' and 'adjudicatory' or 'administrative' government actions.") (internal quotations marks, alterations, and citation omitted), *cert. denied*, 132 S. Ct. 103 (2011). The burden is on Defendants to establish the existence of absolute legislative immunity. *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000).

Absolute immunity is important for local legislators. "[T]he time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace." *Bogan*, 523 U.S. at 52. Further, "the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." *Id.*

The district court ruled that Defendants were entitled to absolute legislative immunity for all claims related to (1) the passage or enforcement of a zoning ordinance, and (2) management of Township meetings. The court further held that the Township Board Defendants were not entitled to legislative immunity for their executive or discretionary decision to delay Plaintiffs' land-transfer request.

In attempting to ascertain which acts Defendants deem legislative and entitled to absolute immunity, we will let Defendants' brief on appeal act as our guide, and address only those claims.

We agree that the passage of zoning ordinance is a legislative act, *see, e.g.*, *Bogan*, 523 U.S. at 55 (holding that the defendant's "acts of voting for an ordinance, were, in form, quintessentially legislative"); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 438 (6th Cir. 2005) (holding that passage of a sign ordinance was a purely legislative act), but such behavior is not at issue here. Instead, Plaintiffs challenged the Board Defendants' denial of Plaintiffs' building permit request, their refusal to enforce local laws against the Hiteshews and Yorks, and their decision to delay processing Plaintiffs' transfer request. These acts are all in the nature of administrative and executive functions and therefore not entitled to absolute legislative immunity. *See, e.g.*, *Jaggers v. City of Alexandria*, No. 08-5213, 2009 WL 233244, at *4-6 (6th Cir. Feb. 2, 2009) (holding that defendant city council members could not establish as a matter of law under Fed. R. Civ. P. 12(c) that their decision to deny the plaintiffs' proposed site-development plan for a gas station/convenience store was legislative; observing that where "the zoning action involves applying existing zoning rules to a specific property, the question of legislative immunity becomes more difficult because applying known rules and legislation to make a zoning decision in this way is more likely to be administrative rather than legislative"); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 273 (5th Cir. 2000) (holding that the mayor's vetoes of the city board's determination that the development plan satisfied city zoning ordinances was nonlegislative and within the realm of enforcement); *id.* at 274 (mayor's decisions to delay the board's approval of proposed development plans at various board meetings was also nonlegislative). *Cf. id.* (holding that mayor's act of placing a rezoning issue back on agenda at an unscheduled meeting with the board of aldermen without

notifying the developer or property owner was a legislative act entitled to legislative immunity). Defendants have not met their burden of establishing that these acts were somehow legislative in substance.

The decision not to place Guindon on the agenda was a legislative act. *See Hogan v. Twp. of Haddon*, 278 F. App'x 98, 104 (3d Cir. 2008) (holding that the mayor's use of a gavel to limit the time the commissioner spoke at meetings and his actions in establishing the time and agendas for meetings were entitled to legislative immunity); *Afjeh v. Vill. of Ottawa Hills*, No. 3:09 CV 2672, 2010 WL 1795973, at *3 (N.D. Ohio May 5, 2010) (holding that the defendants' refusal to allow the plaintiff speak for more than one minute on a specific issue under consideration by the village council was entitled to absolute immunity). Whether Defendants' decision to ban Guindon from further comment about the Hiteshews during the open comment period was a legislative act is a closer question. *Compare Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1252 (10th Cir. 1998) (holding that the defendant county board of commissioners' vote to ban the plaintiff from all future commission meetings and to prohibit him from speaking at or participating in meetings were administrative acts), *and Hansen v. Bennett*, 948 F.2d 397, 402-03 (7th Cir. 1991) (regulating speech during open comment period was an administrative action; no legislative business was conducted during the open comment segment of the meeting), *with Timmon v. Wood*, 633 F. Supp. 2d 453, 460 (W.D. Mich. 2008) (holding that "[a] city council is acting in its legislative capacity when it exercises its investigatory power by presiding over a public-comment period"); *see also Afjeh*, 2010 WL at 1795973, at * 2 (noting that "[s]everal courts have held that moderating the speech and activity of public attendees at a local legislative meeting is legislative activity protected

by absolute immunity") (citing cases). At a minimum, Defendants are entitled to qualified immunity as to this claim.

## 2. Qualified Immunity

Public officials who perform discretionary duties within the scope of their employment are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not a defense to liability; it is an absolute immunity from suit. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Once a defendant asserts the doctrine of qualified immunity, the plaintiff bears the burden of satisfying a strict two-part test. *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011). The plaintiff must show: (1) a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* We may address these tests in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To find that a right is "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal quotation marks omitted). In the "light of pre-existing law[,] the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court has admonished lower

courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011).

Thus, of the foregoing claims mentioned, we will consider for purposes of qualified immunity Defendants' denial of a building permit; denial of land-transfer request; and denial of Guindon's right to speak during public comment.

## B. First Amendment Claims

To sustain a claim under 42 U.S.C. § 1983, a plaintiff must plead and prove that (1) he was deprived of a right secured by federal law, (2) by a person acting under the color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Defendants do not dispute that they are state actors. We therefore turn to the alleged deprivations of Plaintiffs' constitutional rights.

To prove retaliation for exercise of First Amendment rights, the plaintiff must show that (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in party by the plaintiff's protected conduct. *Fritz*, 592 F.3d at 723 (citing *inter alia Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)). Once the plaintiff raises an inference of discriminatory animus, the burden shifts to the defendant to demonstrate that it would have taken the same action anyway. *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399).

## 1. Protected Conduct

It is not disputed that Plaintiffs' public comments at Township Board meetings are protected conduct under the First Amendment. *See Fritz*, 592 F.3d at 723. The filing of a lawsuit to redress

grievances is also clearly protected activity under the First Amendment. *Eckerman v. Tenn. Dep't.
of Safety*, 636 F.3d 202, 208 (6th Cir. 2010). Defendants do not dispute this element either.

## 2. Adverse Actions[4]

We now address the following acts of alleged retaliation presented by Plaintiffs on appeal.

### a. Publicizing Damaging Information

Plaintiffs contend that Defendants publicized facts in the Letter of Understanding the
Township entered into with the Yorks that damaged Plaintiffs' reputation. Specifically, Plaintiffs
complain that the Township's letter cited Plaintiffs as the cause for the Township's actions, despite
the fact that other residents also complained. They claim that, as a result, the Yorks sued them,
causing them to incur significant legal expenses.

This claim is without merit. Guindon admits that he made his complaints about the Yorks
a matter of public record. Furthermore, the suit filed by the Yorks was unrelated to Plaintiffs'
comments and complaints at Township Board meetings. Instead, the Yorks sued Plaintiffs for
stalking, infliction of emotional distress, interfering with their business relationships, and for making
false statements to unnamed government agencies. R. 41-4. The matter was settled by the parties.
R. 41-5.

### b. Limiting Right to Speak at Public Meetings

The district court did not specifically address this claim. Nevertheless, the record reflects
that the Township did not violate Plaintiffs' constitutional right to speak at public meetings. The
Township minutes reflect that Vern Guindon was a frequent guest and speaker at the Township

---

[4]Alleged instances of retaliatory actions by Defendants are scattered across Plaintiffs' brief.
We address only those properly raised with supporting argument, found in pages 22-32 of Plaintiffs'
brief, and not barred by absolute immunity.

Board meetings and the Planning Commission meetings. R. 32-17. To the extent Guindon was limited to speaking through his attorney regarding the Hiteshews, even assuming any constitutional error, we hold that the right to address this issue personally was not clearly established. It was reasonable for Defendants to believe that because Plaintiffs had retained an attorney as to the Hiteshew matter, all communication should proceed through counsel.

### c. Delay of Transfer Request

Plaintiffs contend that the Township's delay in processing their land transfer pursuant to Act 425 was retaliation for filing suit in Monroe County Circuit Court. The Township acknowledges that it delayed consideration of Plaintiffs' request, and that the delay was related to the litigation in state court. However, the Township states that retaliation was not the motive. Rather, the Township explains that, in the state-court action, Plaintiffs sought reversal of the Zoning Board of Appeals's decision affirming the Board's denial of a building permit because the 11-acre parcel did not abut a public highway as required by Section 5.11.

We agree with the district court that

> [t]he Guindons provide[d] no support to show that Defendants were motivated by the filing of suit itself, rather than the impact of the law suit on the uses of land adjoining the Guindons' land to be transferred. Because approval of a land transfer request is purely discretionary, Defendants had every right to delay or even deny Plaintiffs' request. Although specifics regarding the pending state law suit are not provided by either party, the outcome of the law suit would determine what the adjoining property could be used for and what structures could be built on it. Land transfers between the Township and Village require the approval of both municipalities. The authorized uses of adjoining property would certainly be a factor two municipalities would cconsider [sic] before agreeing to transfer land, and therefore, it is very reasonable that the Township would await resolution of the state suit before entertaining a land transfer request.

R. 42 at 21. We also fail to see how the delay in deciding a land-transfer request would chill an ordinary person from seeking redress through the courts. This contention is without merit.

### d. Denial of Building Permits

Plaintiffs claim that Defendants' denial of their request for a building permit was retaliatory, as revealed by the fact that they denied Plaintiffs' claim without explanation. However, the record reflects that Defendant Baranowski sent two letters to Plaintiffs, explaining that they could not build on the property because of Township Zoning Ordinance 5.11. The fact that Defendants sent the denial letters after the ten-day period for approvals specified in Township Zoning Ordinance 21.1 does not create an inference of unconstitutional behavior on the part of Defendants. Plaintiffs' remaining assertions are not supported by the record.

Plaintiffs also claim, and Guindon testified in his deposition, that Defendants would not permit them to build a barn. Plaintiffs state that Baranowski confirmed that the Township had required building permits to build barns. However, Baranowski also stated that the rule had changed while he was building inspector, and that as long as a resident "me[]t the setbacks" he could build an agricultural building. R. 32-21 at 88. Moreover, Plaintiffs never appealed this alleged denial by Baranowski, despite the fact that they appealed the denial of the request to build a house.

Plaintiffs have not met their burden of establishing an adverse action motivated by Plaintiffs' protected activity that would chill a person of ordinary firmness from seeking redress of their grievances.

### e. Directing Others Not to Deal with Guindon

Plaintiffs claim the Township also retaliated against them by directing third parties not to employ or otherwise do business with Guindon. If true, this would establish the second element of

a retaliation claim. *See Fritz*, 592 F.3d at 725-26. However, the only proof they provide is the Declaration of David C. Hoffman, which states that he was told by an unidentified Village of Dundee employee that the reason Guindon was not hired for certain jobs was because of threats made by the Township against a non-party third person. Fed. R. Civ. P. 56(c)(4) provides that an affidavit supporting or opposing a motion for summary judgment be based on personal knowledge of the facts that would be admissible in evidence. Hoffman's declaration does not meet this standard. Rather, the averments show that the source of Hoffman's information was an unnamed Village of Dundee employee. Because offered to prove the truth of the matter asserted, Hoffman's declaration is inadmissible hearsay under Fed. R. Evid. 801 and 802. Plaintiffs have not met their burden under Fed. R. Civ. P. 56.

### C. Equal-Protection Claim

Plaintiffs claim they have been denied equal protection because the Township failed to act on their Act 425 land-transfer request while granting all others brought before the Township. Even if this is the case (although Plaintiffs have no offered proof to this effect) Plaintiffs have not established that they were treated differently than other similarly situated residents. To state an equal-protection claim, the plaintiff must show that the government treated similarly situated persons differently. *See Silver v. Franklin Twp., Bd. Of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). As the district court explained, Plaintiffs provided no factual support to show that any other resident who was involved in a lawsuit with the Township was granted a land-transfer request.

### D. Due-Process Claims

Plaintiffs claim that Defendants denied them of substantive due process by (1) continuing to deny their requests for a land transfer even though there is no longer a pending lawsuit, (2) denying

Plaintiffs a building permit when there is no proof that their property did not abut a public road, and (3) arbitrarily applying and interpreting the "vague" Township Zoning Ordinance to Plaintiffs' property.

Plaintiffs' procedural-due-process claims are based on the Township's (1) denial of his requests to be put on the agenda, (2) failure to provide Guindon with notice before depriving him of his liberty interest in working at construction-related jobs for companies that do business with the Township, and (3) failure to provide Plaintiffs with notice and an opportunity to be heard before "delaying" their land-transfer request.

Plaintiffs criticize the district court for failing to review or analyze any of these claims. However, we agree with the district court that, because all of these claims are derivative of Plaintiffs' claims asserting violations of their individual constitutional rights, and those claims lack merit, we need not address any alleged substantive or procedural-due- process violations.

### E. Facial Challenge to Zoning Ordinance

Plaintiffs complain that Section 5.11 is unconstitutionally vague and that the district court erred in holding that the zoning ordinance was not void for vagueness. This claim is barred by res judicata. *Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006) (stating that Michigan's res judicata doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not") (internal quotations and citation omitted). Plaintiffs could have raised this issue in the Monroe County Circuit Court when they appealed the denial of Zoning Board of Appeals' decision. *Id.* at 734, 737.

-18-

## F. Conspiracy Claims

Plaintiffs maintain that Defendants conspired to deprive them of their constitutional rights and failed to prevent a wrongful constitutional conspiracy, in violation of 42 U.S.C. §§ 1985(3), 1986. The record contains absolutely no proof to support these claims. Furthermore, "'conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'" *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Plaintiffs have failed to allege any facts to support their claim that Defendants conspired to deprive, or neglected to prevent a conspiracy to deprive, Plaintiffs of their constitutional rights.

## G. Michigan Right to Farm Act

Plaintiffs allege that the Township has violated the Michigan Right to Farm Act, Mich. Comp. Laws § 286.471, by restricting their use of their property for farming purposes. Although Plaintiffs claim that Defendants would not allow them to build a barn, the record reflects merely that Baranowski denied their request to build a house on the 11-acre parcel. The record does not reflect that Plaintiffs submitted a request to build a barn or that the Township has taken any steps to prevent Plaintiffs from building one. Furthermore, the Michigan Right to Farm Act was enacted to "prohibit nuisance litigation against a farm or farm operation." *Northville Twp. v. Coyne*, 429 N.W.2d 185, 186 (Mich. Ct. App. 1988). It authorizes a farm operation to recover from the plaintiff costs and expenses incurred if it prevails in a nuisance action in connection with the defense of the action. Mich. Comp. Laws § 286.473. Plaintiffs present no authority for the proposition that the Act enables them to sue the Township. The Township never instituted new proceedings against them.

-19-

This claim is therefore without merit.

### III. Conclusion

Plaintiffs' claim that they were deprived of their First Amendment rights because they were not placed on the agenda is barred by legislative immunity. Plaintiffs' claim that they were banned from speaking during the open comment period is defeated by Defendants' qualified immunity. The remaining claims must be dismissed because Plaintiffs failed to establish the violation of any constitutional right at all. The judgment of the district court is AFFIRMED.