ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE
The Lansing City Council voted down an ordinance that would have provided Plaintiff with a tax break in support of his proposed real estate development. Plaintiff says the decision was motivated by an improper desire to block affordable housing projects in Lansing, in violation of the federal Fair Housing Act, federal civil rights statutes, and the Fourteenth Amendment. Whether Plaintiff is correct about that will be an issue for another day, after both side have had a full opportunity to investigate the facts and present their legal arguments.
What is at issue on the present motion is a much narrower-and more technical-question: namely, whether the individual council members who voted against the ordinance are potentially liable for money damages out of their own personal pockets if Plaintiff sustains his claim against the City. They are not. Council members are politically accountable to their constituents for the votes they cast. They are not accountable to the Court through the threat of personal liability for money damages. Accordingly, the individual council members must be dismissed based on well-established principles of legislative immunity. The case will proceed normally against the City of Lansing.
BACKGROUND
A. The Saboury Housing Plan
Plaintiff Sam Saboury is a real estate developer of mixed-use projects that include affordable housing. He proposed a *931 $ 5.9 million mixed-use development that included twenty-three affordable housing units (the "Saboury Affordable Housing Plan") and 5,000 square feet of commercial retail space on Washington Avenue in the City of Lansing, in an area known as "Old Town."
Approval for the construction or development itself is not at issue here. Rather, what is at issue is a proposed ordinance that would have provided a special financial incentive for Plaintiff. The project was already exempt from property taxes under Michigan law because of a statutory exemption for housing projects financed by "federally-aided or authority-aided" mortgages or grants. MICH. COMP. LAWS § 125.1415a(1). Instead of traditional property taxes, developers of such housing projects must pay the municipality "an annual service charge for public services in lieu of all taxes," also referred to as a "PILOT." § 125.1415a(2). Section 125.1415a(2) sets a statutory PILOT at ten percent of "annual shelter rents obtained from the project." Id. That section, however, also provides that "[a] municipality, by ordinance , may establish or change, by any amount it chooses, the service charge to be paid in lieu of taxes by all or any class of housing projects exempt from taxation under this act." Id. (emphasis added). That is what Plaintiff sought in this case-an ordinance that would have reduced his PILOT from the statutory ten percent down to four percent.
B. The PILOT Ordinance
Plaintiff sought an ordinance from the City Council for a four percent PILOT for the Saboury Affordable Housing Plan. Specifically, the proposed ordinance would "amend the code of ordinances of the City of Lansing ... for the purposes of providing for a service charge in lieu of ad valorum property taxes ...." (ECF No. 27-1, PageID.196). The ordinance provided that the "class of housing developments ... for which the service charge shall be paid in lieu of ... taxes shall be housing developments which are financed or assisted pursuant to the Act." Id. at PageID.200. This included "twenty-four (24) qualified or low income multi-family dwelling units in a housing development project known as the Saboury Building Appartments [sic] ...." Id. at PageID.196. The ordinance set the service charge for that class of housing developments at four percent. Id. at PageID.202.
On January 25, 2016, Virg Bernero, the Mayor of Lansing, submitted Plaintiff's proposed ordinance to the Lansing City Council. Defendants Jody Washington, Carol Wood, and Adam Hussain are members of the Lansing City Council. The City Council, in turn, referred that request to the Development and Planning Committee ("D/P Committee"). Defendant Jody Washington is chair of the D/P Committee.
On January 28, 2016, Tom Edmiston of Cinnaire, a nonprofit community development finance institution, provided a presentation on affordable housing and PILOTS to the D/P Committee. The D/P Committee again discussed the Saboury PILOT ordinance on February 11, 2016, and set a public hearing for February 29, 2016. On February 22, 2016, the City Council voted to set a public hearing for February 29, 2016. The public hearing took place as scheduled. On March 10, 2016, Washington, as chair of the D/P Committee, deferred action on the Saboury PILOT ordinance pending a March 24, 2016, D/P Committee meeting.
The Committee of the Whole met to discuss affordable housing and PILOTs on March 21, 2016. The minutes of that meeting reflect extensive discussion of PILOTs in general and their impact on city tax revenue (ECF No. 17-4, PageID.132-138).
*932 For example, the City Council discussed the current amount of revenue-producing property in the city, and how PILOTs affected the revenue derived from property taxes both in the short-term and long-term. Id. at PageID.133-134. The City Council also compared the amount of revenue derived from single-family homes with affordable housing developments and discussed whether the City could tax a percentage of the housing units in a development at market rate while providing a PILOT for the rest. Id. at PageID.134-135. On March 24, 2016, the D/P Committee approved referral of the Saboury PILOT ordinance to the full City Council in a 3-0 vote.
C. The City Council Vote
On March 28, 2016, the City Council took final action on the PILOT ordinance. The agenda for that meeting placed the Saboury PILOT under subsection F, entitled "ORDINANCES FOR PASSAGE," (ECF No. 17-2, PageID.116), which was part of Section XIII, entitled "Council Consideration of Legislative Matters." (ECF No. 17-2, PageID.114). Ultimately, the City Council rejected the Saboury PILOT ordinance in a 4-4 vote. Plaintiff argues that Defendants Wood, Washington, and Hussain all voted to reject the ordinance.[1]
D. The Litigation
On June 13, 2016, Plaintiff filed a complaint in this Court, alleging violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq. , the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment. Id. at PageID.7-8. Plaintiff argues that the City of Lansing's failure to pass the PILOT ordinance and the passage of the moratorium on PILOT ordinances constitute a discriminatory policy by causing the disproportionate exclusion of minorities from Old Town. Id. Plaintiff sued not only the City, but also three of the individual council members who voted against the ordinance. The individual Defendants move for summary judgment based on absolute legislative immunity (ECF No. 17 ).
SUMMARY JUDGMENT STANDARD
Summary judgment is appropriate where the record evidence presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it is defined as such by substantive law and will affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute exists, precluding summary judgment, if the court finds that a reasonable jury could find for the nonmoving party. Id. The burden is on the moving party to show that no genuine dispute as to any material fact exists. FED. R. CIV. P. 56(c)(1).
If the moving party satisfies this burden, the nonmoving party must go beyond conclusory allegations and unsubstantiated assertions to identify specific admissible evidence and show how that evidence supports their claims. Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994). If the nonmovant fails to meet this burden, summary judgment is appropriate.
*933 Topalian v. Ehrman , 954 F.2d 1125, 1132 (5th Cir. 1992). Moreover, summary judgment is required where, "after adequate time for discovery and upon motion ... a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court draws all inferences in a light most favorable to the nonmoving party. Agristor Fin. Corp. v. Van Sickle , 967 F.2d 233, 236 (6th Cir. 1992).
LEGISLATIVE IMMUNITY
Legislators have long enjoyed immunity from liability for their legislative activities. Bogan v. Scott-Harris , 523 U.S. 44, 48-49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). This immunity rests on the policy that "[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." Id. at 52, 118 S.Ct. 966. This is because "[a]ny restriction on a legislator's freedom undermines the public good by interfering with the rights of the people to representation in the democratic process." Biblia Abierta v. Banks , 129 F.3d 899, 903 (7th Cir. 1997) (citing Tenney v. Brandhove , 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) ).
This policy carries special weight for local legislators because "the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace." Id. Additionally, "the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." Id. "Private lawsuits threaten to chill zealous representation by encouraging legislators to avoid controversial issues or stances in order to protect themselves 'not only from the consequences of litigation's results but also from the burden of defending themselves.' " Supreme Court of Virginia v. Consumers Union of U. S., Inc. , 446 U.S. 719, 732, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1967) (quoting Dombrowski v. Eastland , 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) ). Because of this, "local officials ... are absolutely immune from § 1983 suits arising out of their legislative actions." Timmon v. Wood , 633 F.Supp.2d 453, 459 (W.D. Mich. 2008).
"Whether an act is legislative depends on the nature of the act, rather than the official's motive or intent." Guindon v. Township of Dundee, Michigan , 488 F. App'x 27, 33 (6th Cir. 2012) (citing Bogan , 523 U.S. at 54, 118 S.Ct. 966 ). The question is whether the defendants' actions, when "stripped of all considerations of intent and motive," were legislative rather than administrative or executive. Bogan , 523 U.S. at 55, 118 S.Ct. 966. Therefore, motive is not an element to be considered when determining absolute legislative immunity. Tenney , 341 U.S. at 377, 71 S.Ct. 783. "The claim of an unworthy purpose does not destroy the privilege [of absolute legislative immunity]." Id. This is because absolute immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." Id. at 377, 71 S.Ct. 783.
The Sixth Circuit has adopted a two-part test for this determination. Guindon , 488 F. App'x at 33. First, a court must consider the acts' form to determine whether "they were integral steps in the legislative process." Id. (citing Bogan , 523 U.S. at 55, 118 S.Ct. 966 ). Second, a court should analyze the substance of the defendant's *934 acts to determine whether they bear "all the hallmarks of traditional legislation," including "a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." Id. Defendants carry the burden to demonstrate the existence of legislative immunity. Canary v. Osborn , 211 F.3d 324, 328 (6th Cir. 2000).
A. Legislative in Form
Under the first inquiry-whether the defendants' acts are legislative in form-courts have held that "acts of voting for an ordinance, [are] in form, quintessentially legislative." Bogan , 523 U.S. at 55, 118 S.Ct. 966 ; see also R.S.W.W. Inc. v. City of Keego Harbor , 397 F.3d 427, 438 (6th Cir. 2005) (holding that passage of a sign ordinance was a purely legislative act). Here, neither party disputes that, in form, Defendants' actions were legislative. Nor could they, as both the authority for Defendants' actions and records of the same describe these actions as a vote on an ordinance-a quintessentially legislative action.
The authority for Defendants' actions derives from the Lansing City Charter and Michigan statutory law. Under the Lansing City Charter, "[t]he legislative power of the City is vested in the City Council", (ECF No. 17-1, PageID.107), of which the individual defendants are all members. The Council engages in legislative action "by ordinance or resolution." Id. at PageID.109. Section 125.1415a(2) provides that "[a] municipality, by ordinance , may establish or change, by any amount it chooses, the service charge to be paid in lieu of taxes by all or any class of housing projects exempt from taxation under this act." § 125.1415a(2) (emphasis added).
The records of Defendants' actions confirm that these actions were legislative in form. The agenda for the March 28, 2016, City Council meeting placed the Saboury PILOT under subsection F, entitled "ORDINANCES FOR PASSAGE," (ECF No. 17-2, PageID.116), which was part of Section XIII, entitled "Council Consideration of Legislative Matters." (ECF No. 17-2, PageID.114). Accordingly, the undisputed record makes clear that Defendants' action of voting on the PILOT ordinance are legislative in form.[2] See Bogan , 523 U.S. at 55, 118 S.Ct. 966 ; R.S.W.W. , 397 F.3d at 438 ; see also South Middlesex Opp. Council, Inc. v. Town of Framingham , 752 F.Supp.2d 85, 111 (D. Mass. 2010) ("[T]he actions of the PILOT Committee, to the extent they were performing the tasks delegated to it by the Town Meeting, may constitute legislative actions ....").
B. Legislative in Substance
Additionally, the Defendants' acts of voting on the Saboury PILOT ordinance and the PILOT moratorium are legislative in substance. A PILOT ordinance inherently implicates broad policy concerns and the City Council's own discretion. It is fundamentally about revenue and whether to give a project or set of projects relief from the ten percent statutory standard. The City Council's decision not to enact the PILOT ordinance in this case reveals a debate over the impact of PILOTs generally on city revenue, budgets, and affordable housing-precisely the policy considerations council members are supposed to discuss and weigh in voting on a PILOT ordinance.
*935 The City Council legislative record demonstrates this beyond genuine dispute. The March 21, 2016 meeting of the Committee of the Whole had a presentation on PILOT programs from an expert in the field. Id. The minutes of that meeting reflect extensive discussion of PILOT programs in general and their impact on City revenue, budgets and affordable housing. (ECF No. 17-4, PageID.133-135). Additionally, a Press Release regarding the purpose of the March 21, 2016, City Council meeting confirms the meeting's purpose, stating that the meeting "enabled the City Council members to hear all aspects of the projects, including financial impacts on the City tax capture, access to safe and stable housing." (ECF No. 17-5 ).
Plaintiff, however, claims that Defendants' vote on the PILOT ordinance is more like the denial of a permit request or rezoning application, which the Sixth Circuit in Guindon v. Township of Dundee and Jagger v. City of Alexandria has held are usually administrative and executive-not legislative-actions. See Jagger v. City of Alexandria , No. 08-5213, 2009 WL 233244, at *4-*6 (6th Cir. Feb. 2, 2009) (rezoning application); Guindon , 488 F. App'x at 33 (permit request). This ordinance is not like the zoning decisions in those cases. Contrary to Plaintiff's assertion, the PILOT ordinance here in no way addressed the suitability of the Plaintiff's project itself. Rather, its only function was to set the payment rate for the development at four percent, rather than the statutory ten percent (ECF No. 27-1, PageID.196-205). It had nothing to do with site plan approvals or special zoning permits of any kind.
A PILOT ordinance-unlike a permit request or a rezoning application-directly implicates the budgetary priorities of a city, a factor critical to the Supreme Court's finding that the passage of a municipal ordinance was legislative action in Bogan , 523 U.S. at 55-56, 118 S.Ct. 966. The enactment of a PILOT ordinance has a direct impact on the revenue a city would otherwise receive from a project at the statutory rate. The Sixth Circuit's decisions in Guindon and Jagger are therefore not to the contrary, as those cases both involve city council decisions that in substance did not implicate budgetary priorities of a city.
Moreover, the fact that the ordinance at issue directly affected Plaintiff's development plan does not raise a dispute of material fact as to whether the vote on the ordinance is a legislative act. Courts have repeatedly held that "the availability of absolute immunity does not depend on the number of people that a law happens to affect at the time of its passage." Biblia Abierta , 129 F.3d at 904 (citing Rateree v. Rockett , 852 F.2d 946, 950 (7th Cir. 1988) ). Thus, in Bibila Abierta , the Seventh Circuit held that rezoning ordinances that prevented a church from buying certain property for use as church sites were legislation, not administrative or executive acts, even though the ordinances only applied to a limited group of people. Id. at 904-05. Similarly, in Raterree v. Rockett , the Seventh Circuit held that city commissioners were entitled to legislative immunity even though their actions affected only a few individuals. 852 F.2d at 950. In both of these cases, the courts focused not on the immediate impact of the decision, but on its broader and long-term effect on the city's budget and populace. Raterree , 852 F.2d at 950-51 ; Biblia Abierta , 129 F.3d at 904-05. The same is true in this case.
OTHER ISSUES
The legislative immunity matter does not settle whether individual council members may properly be subject to subpoena for discovery depositions in this *936 case. It is certainly possible-even probable-that one or more of the council members will have factual information that bears on the validity of a claim or defense at issue in the ongoing case against the City itself. Nor does the legislative immunity motion resolve whether one or more council members can or should be added to the case in their official, rather than their individual capacities, to effect any necessary relief if Plaintiff prevails on his claims against the City. If and when these issues need attention, the Court expects the parties will raise them by motion.
CONCLUSION
Accordingly, it is ordered that individual Defendants' Motion for Summary Judgment (ECF No. 17 ) is GRANTED because the individual council members are protected by legislative immunity from any risk of personal financial exposure for their vote on the ordinance. Their individual accountability is to the voters, not the Court.
This case will proceed normally against the City of Lansing.

Additionally, on May 10, 2016, the City Council voted to pass a resolution establishing a nine-month moratorium on PILOT ordinances in Lansing. (ECF No. 27-2, PageID.29). That resolution never went into effect, however, as Mayor Bernero vetoed it. Id. at PageID.208.

Plaintiff himself refers to the Saboury PILOT as an "ordinance" in Paragraphs 29 and 34 of the Complaint (ECF No. 1. PageID.5-6), and admits that Defendants' allegedly discriminatory actions constitute a "vote" on that ordinance (ECF No. 20, PageID.166).